**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

KIM XI LEGACY ENTERPRISE, LLC,

Plaintiff,

v. Case No. 2:24-cv-1053-SPC-KRH

ERIC J. RICHARDSON,

Defendant.
_____________________________/

**ORDER**

This matter is before the Court on Plaintiff Kim XI Legacy Enterprise, LLC's Opposed Renewed Motion to Compel Discovery Responses. (Doc. 53). Defendant Eric Richardson filed a response in opposition. (Doc. 59). Kim XI replied (Doc. 62); Richardson surreplied (Doc. 63). The Motion is granted in part and denied in part.

**Background**

Kim XI sues Richardson for trademark infringement and unfair competition under the Lanham Act. Kim XI alleges that Richardson used the mark "Overage Overflow" on a YouTube channel, video banners, and an email address. This allegedly drove traffic and revenue to various commercial offerings.

Kim XI moved to compel discovery into Richardson's revenue from business beyond his YouTube channel. (Doc. 40). The Court denied that motion, finding that Kim XI had "not shown how the Interrogatories and Requests for Production that target all of [Richardson's] businesses during the relevant period are tied to

any allegedly infringing activity," and that the requests, as framed, sought information that was neither relevant nor proportional to the needs of the case. (Doc. 43 at 3).

Since that ruling, Kim XI deposed Richardson. (Doc. 53-3 ("EJR Depo")). At the EJR Depo, Richardson identified seven specific revenue streams promoted in the description of a YouTube video bearing the "Overage Overflow" banner: (1) a link to Richardson's online course; (2) a link to Richardson's surplus-funds eBook; (3) an affiliate link to excesselite.com; (4) an affiliate link to XPLSpro.com; (5) an affiliate link to Surplussystems.io; (6) a link to book a free consulting call; and (7) the email address overageoverflow@gmail.com. EJR Depo. at 48:7-56:12. Kim XI now renews its Motion to compel discovery into these seven revenue streams.

## Legal Standard

Under the Federal Rules of Civil Procedure, discovery is permitted to obtain "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671-ORL-31DAB, 2007 WL 3232227, at *1 (M.D. Fla. Oct. 31, 2007).

The party moving to compel discovery bears the initial burden of proving it is relevant. *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185-ORL-22TBS,

2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016). The responding party must then demonstrate how the discovery is improper, unreasonable, or disproportionate. *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, No. 8:21-cv-146-MSS-AAS, 2021 WL 5961144, at *1 (M.D. Fla. Dec. 16, 2021); *see also Nolan v. Integrated Real Est. Processing, LP*, No. 3:08-cv-642-J-34HTS, 2009 WL 635799, at *1 (M.D. Fla. Mar. 11, 2009) ("When opposing the motion [to compel], a party must show specifically how the requested discovery is" objectionable.). That said, resolution of a motion to compel is within the trial court's sound discretion. *See Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

Relevant here is Rule 34(a), which requires a party to produce documents responsive to a request for production so long as those documents are in the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Control does not require legal ownership or physical possession. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (finding that "[c]ontrol is defined not only as possession, but as the legal right to obtain documents requested upon demand"). Courts have since construed this standard broadly to include the "practical ability to obtain the materials sought on demand." *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011); *see also Grayson v. No Labels, Inc.*, No 6:20-cv-1824-PGB-LRH, 2021 WL 8199902, at *2 (M.D. Fla. Dec. 29, 2021). The same control standard governs a party's obligation to answer interrogatories under Rule 33 concerning information within its control. *Sanho Corp. v. KaiJet Tech. Int'l Ltd.*,

*Inc.*, No. 1:18-cv-5385-SDG, 2020 WL 4346881, at *10 n.61 (N.D. Ga. July 29, 2020).

With these principles in mind, "Under the Lanham Act, damages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986) (citing 15 U.S.C. § 1117). Damages are recoverable "even when they are not susceptible to precise calculations." *Id.* at 1565.

## Discussion

The Court addresses each disputed category in turn.

### A. Local Rule 3.01(g)

Richardson argues Kim XI's conferral certification relies on stale correspondence from 2025 and a vague discussion in April 2026. (Doc. 59 at 9-10). He also says that Kim XI's final effort to confer—a call placed after hours, the day before the discovery deadline—falls short. (Doc. 59 at 5-7). Richardson is right. We take 3.01(g) conferrals seriously here. And a last-minute call doesn't fit the bill.

Kim XI is warned that future motions based on such flimsy conferral will be summarily denied. Here, however, the renewed Motion raises no new claims or theories of liability. It presents rather a narrower version of the same discovery dispute already fully briefed and ruled on once before. (Doc. 43). So the Court declines to deny the Motion on 3.01(g) grounds and proceeds instead to the merits.

## B. Discovery Concerning Prestige Family Assets Group, LLC

Richardson objects that revenue and financial information belonging to Prestige—his Florida company—is not subject to discovery because that entity is not a party. (Doc. 59 at 11-13). Kim XI argues that Richardson is personally liable for Prestige's infringing conduct and that discovery definitions of "you" reach entities under Richardson's control. (Doc. 62 at 2-4). Richardson replies that *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) and *Evexias Health Sols. LLC v. Evexia Med., LLC*, No. 24-80928-CIV, 2025 WL 3689109 (S.D. Fla. May 8, 2025), address personal liability for damages, not whether a non-party entity's documents may be compelled through requests served on an individual defendant. Richardson also cites *Dewberry Group, Inc. v. Dewberry Engineers Inc.*, 604 U.S. 321 (2025), for the proposition that "defendant's profits" under the Lanham Act means the profits of the named defendant.

The Court agrees with Richardson that those cases answer a different question than the one presented here. But whether Richardson is personally liable for Prestige's conduct, and whether Prestige's profits may be recovered as damages against Richardson, are not questions the Court needs to resolve here. Discovery of the profits flowing from the alleged infringement is clearly relevant, regardless of which related corporate entity those proceeds are dumped into. Put differently, the records would be discoverable despite Prestige not being a party.

The Court notes that Kim XI could have pursued Prestige's records directly through a subpoena. And that avenue perhaps barely remains available with the

discovery deadlines, regardless of how the legal control question might be resolved. Fed. R. Civ. P. 45. Plus, to the extent that a short, limited extension of discovery is needed, the Court could grant that relief. So given Richardson's ownership of both entities, it seems a matter of corporate identity semantics who produces records under which Rule.

The Court will defer this issue for the parties to resolve. They should confer—in substance—and settle that production without Court involvement. As discussed above, this dispute reflects an eleventh-hour conferral this Court has cautioned against, and a more substantive meet-and-confer at the outset may well have avoided the need for this motion, or at least narrowed it considerably.

The parties are therefore directed to meet and confer in good faith regarding voluntary production of the Prestige records sought in RFP 27. If the parties are unable to reach agreement, Kim XI may serve a Rule 45 subpoena directly on Prestige and seek to extend discovery on that limited issue.

**C. Interrogatory No. 3 and the Email Address**

An interrogatory answered as written, and not shown to be false or incomplete on the existing record, will not be ordered supplemented merely because the requesting party is dissatisfied with the answer. *Silver v. Tenet Health Care Corp.*, No. 09-80365-CIV, 2010 WL 11444064, at *5-6 (S.D. Fla. Aug. 6, 2010). A party, however, has a continuing duty to supplement a disclosure or discovery response that it learns is incomplete or incorrect. Fed. R. Civ. P.

26(e)(1)(A). Deposition testimony that postdates and contradicts a verified interrogatory answer triggers that duty.

Interrogatory No. 3 asks Richardson to identify "each activity" in which he "directly or indirectly" used the phrase "overage overflow" including variations, and the revenue generated by that activity. Richardson's verified response identifies only the YouTube videos bearing the phrase and states that the associated email address "has derived no revenue." Richardson's deposition testimony confirms that revenue streams 1 through 6 (the course, eBook, and three affiliate links) never displayed or otherwise used the phrase "Overage overflow" on the platforms. EJR Depo. at 48:7-55:11. As to those streams, Interrogatory No. 3 is answered as written.

The email address stands apart. Richardson's verified answer states the email "has derived no revenue," yet Richardson testified that individuals contacted him at that address seeking consulting services and that he performed—and was paid for—such services. EJR Depo. at 55:12-56:2. This testimony postdates and contradicts the verified interrogatory response. Because the deposition testimony directly conflicts with the sworn "no revenue" representation, Richardson's obligation to supplement under Rule 26(e)(1)(A) is triggered.

Richardson does not and cannot credibly argue that his own later sworn testimony is irrelevant to a question he already answered under oath. As to streams 1 through 6, by contrast, Kim XI has not identified any testimony or document contradicting Richardson's sworn representation that those platforms never

displayed the phrase. The Court declines to order a party to answer an interrogatory a second time where the first answer is unrebutted.

The Motion is denied as to a broader response to Interrogatory No. 3 covering streams 1 through 6, and granted as to revenue stream 7 (the email address). Richardson shall serve a supplemental, verified response consistent with his deposition testimony.

**D. Interrogatory No. 13; RFP 7, 13, 22, 23, and 25**

Interrogatory No. 13 asks Richardson to identify the gross revenue he received in connection with his use of "overage overflow." As to RFP 7, RFP 13, and the parallel category requests (RFPs 22, 23, and 25, seeking quarterly revenue by category), Richardson gave the identical response to each regardless of the category requested: production limited to "revenue obtained from the Defendant's YouTube videos which at one point contained the phrase 'overage overflow.'"

The question at this stage is not whether Kim XI's theory of liability will prevail. It is whether the theory is plausible enough to make the discovery relevant under Rule 26(b)(1)'s broad standard. *Silver*, 2010 WL 11444064, at *1. It clears that bar. Kim XI contends that the banner functioned as a marketing funnel which drove traffic and revenue to the offerings linked beneath it, such that a reasonable factfinder could find consumers mistook Kim XI as the sponsor.

**1. Streams 1, 2, 6, and 7 Compared to Streams 3 Through 5**

The strength of the nexus to the infringing banner varies by stream. It is strongest for revenue streams 1 (course), 2 (eBook), 6 (free-call booking link), and

7 (email), each of which is Richardson's own offering, promoted directly beneath the banner. It is comparatively weaker for streams 3 through 5 (the excesselite.com, XPLSpro.com, and Surplussystems.io affiliate links) because those are independently branded third-party platforms with their own marks and affiliate codes—none referencing "overage overflow." EJR Depo. at 51:5-55:11; (Doc. 53-4 at 11) (affiliate codes "prestige30off," "juggernaut," and "eric88").

Although Richardson does not cite it, *Byte Federal, Inc. v. Lux Vending LLC*, No. 8:23-cv-102-MSS-SPF, 2024 WL 4932754 (M.D. Fla. Dec. 2, 2024), warrants brief discussion. There, the plaintiff sought advertising data for the defendant's advertisements referencing a *different* competitor's trademark—not the plaintiff's own mark—to show a broader pattern of similar advertising conduct bearing on willfulness. Such data was only tangentially relevant to plaintiff's own infringement claim. *Id.* at *4. But *Byte* is different. The requested data there concerned advertisements built around a separate competitor's mark, offered only to show a pattern of similar conduct elsewhere in the defendant's business. In other words, it had no connection to the specific advertisements underlying plaintiff's own claim.

Streams 3 through 5, by contrast, were promoted within the very video description that bears the infringing banner at issue here. They are not evidence of separate, unrelated conduct. Instead, they indicate revenue generated through the specific promotional material underlying this suit. In short, the Court finds the nexus supporting streams 1, 2, 6, and 7 extends to streams 3 through 5, too.

### 2. Richardson's Boilerplate Objections

Richardson's identical, boilerplate response to RFPs 7, 13, 22, 23, and 25 is the type of practice this Circuit has repeatedly disapproved. In *Otto Brands, LLC v. Otto's Express Car Wash, LLC*, "textbook," boilerplate, nearly-identical objections that requests were "grossly overbroad" and "drastically disproportionate . . . under Rule 26(b)" failed because they "merely track[ed] the introductory language of the Rule" without addressing the six enumerated proportionality factors. No. 3:19-cv-572-TKW-EMT, 2020 WL 5845739, at *4-5 (N.D. Fla. Feb. 19, 2020). Richardson's objections suffer the identical defect, repeated verbatim across all five requests.

Richardson's practice of nonetheless producing a narrow set of documents "[s]ubject to and without waiving" those objections compounds the problem. (Doc. 53-2 at 12-15). Courts find this practice "is improper and fails to preserve any objection to the discovery request." *All. Laundry Sys., LLC v. Adams*, No. 3:23-cv-22130-MCR-ZCB, 2024 WL 3831409, at *2 (N.D. Fla. Aug. 15, 2024) (citing *Ellis v. Pilot Travel Ctrs. LLC*, No. 4:19-cv-219, 2019 WL 13198255, at *2 (N.D. Fla. Sept. 26, 2019)).

Two defenses fail regardless of the objections' formal deficiency. First, Richardson cannot argue that isolating revenue by stream is unduly burdensome since he testified he does not track that distinction at all. EJR Depo. at 56:3-12; 125:15-20; 125:25-126:5. Second, compliance does not require Richardson to create new documents. He testified that he already compiles a year-end accounting

of his revenue streams in the ordinary course of business. EJR Depo. at 134:19-135:7; *cf. Byte Federal, Inc.*, 2024 WL 4932754, at *3 (Rule 34 does not require a party to create documents that do not already exist).

Accordingly, Richardson should provide substantive, verified interrogatory responses to Interrogatory No. 13, and produce documents sufficient to show gross revenue, by source and date, for each of the seven revenue streams identified in Kim XI's Exhibit 4 (Doc. 53-4), for the period set out below.

**E. Temporal Scope**

Discovery in a trademark action is properly limited to the period of alleged infringing exposure. But revenue trends following the alleged cessation of infringing conduct may remain relevant to causation and damages where the record does not clearly establish when exposure in fact ended. *See City Hunt, LLC v. Let's Roam, LLC*, No. 6:18-cv-1764-ORL-41DCI, 2019 WL 13062111, at *3 (M.D. Fla. Aug. 28, 2019) (noting "almost no use of the contested mark" during a claimed cutoff period was "a concession that they still did use the mark," making sales during that period relevant to damages).

Richardson argues the temporal scope of Kim XI's requests (January 1, 2020, to the present) is overbroad because the infringing banner was removed promptly after Kim XI's December 2020 cease-and-desist letter. (Doc. 59 at 16-17). The record does not bear this out. Richardson testified he never edited or removed the banner from the approximately six videos on which it originally appeared, *see* EJR Depo. at 58:16-59:23, and that it is plausible those videos remained publicly

visible with the banner intact through the November 2024 filing of this action. EJR Depo. at 77:22-79:21. Richardson's own YouTube analytics—produced in discovery—show the cumulative revenue trendline for those videos rising from their creation in late 2020 through at least June 2025—with continued growth from December 2023 onward. EJR Depo. at 114:20-116:9. On this record, the Court cannot find that infringing exposure and associated revenue ended shortly after 2020, as Richardson contends.

Accordingly, the temporal scope of production runs from January 1, 2020, through December 31, 2025.

## F. Verification

The Motion notes that verified interrogatory responses have not been provided. Richardson does not meaningfully dispute this in either the opposition or surreply. It is clear, however, that interrogatory answers must be answered separately and fully in writing under oath. Fed. R. Civ. P. 33(b)(3), (5). The Motion is therefore granted as to this request. Richardson shall serve verified responses to all interrogatory answers, including those supplemented pursuant to this Order, within the time set below.

## G. Fees and Expenses Under Rule 37(a)(5)

If a motion to compel is granted in part and denied in part, the Court may apportion the reasonable expenses for the motion, but retains discretion not to award any expenses at all. Fed. R. Civ. P. 37(a)(5)(C). Each side's position found substantial support in the record as to at least some of the disputed requests. The

Court's prior order denying Kim XI's first motion to compel turned on a lack of specificity in tying Richardson's various businesses to the alleged infringement. (Doc. 43 at 3). Kim XI's renewed Motion, however, was materially narrower and specifically tied to deposition testimony obtained in the interim, rather than a mere repetition of the requests previously denied. Under these circumstances, an award of expenses to either side under Rule 37(a)(5) is not warranted. Fed. R. Civ. P. 37(a)(5)(C).

**ORDERED:**

1. Plaintiff's Opposed Renewed Motion to Compel Discovery (Doc. 53) is **GRANTED and DENIED IN PART.**

2. **On or before September 4, 2026**, Defendant shall serve a supplemental, verified response to Interrogatory No. 3 addressing revenue stream 7 (the email address) consistent with his deposition testimony.

3. **On or before September 4, 2026**, Defendant shall serve a substantive, verified response to Interrogatory No. 13, and shall produce documents responsive to Requests for Production 7, 13, 22, 23, and 25, sufficient to show gross revenue, by source and date, for each of the seven revenue streams identified in Plaintiff's Exhibit 4 (Doc. 53-4), for the period January 1, 2020 through December 31, 2025.

4. **As to RFP 27**, the parties shall meet and confer regarding production of Prestige Family Assets Group, LLC's financial records **within seven (7) days of this Order**. If the parties do not reach agreement, Plaintiff may serve a

subpoena on Prestige Family Assets Group, LLC pursuant to Federal Rule of Civil Procedure 45, limited to the same seven revenue streams and period set forth above. The discovery deadline may then be extended, solely and exclusively for that limited purpose of completing any such subpoena.

5. **On or before September 4, 2026**, Defendant shall serve verification of all interrogatory responses served to date, including those supplemented pursuant to this Order.

6. In all other respects, the Motion is **DENIED**, including as to a broader response to Interrogatory No. 3 covering revenue streams 1 through 6.

7. Each party shall bear its own fees and expenses incurred in connection with this Motion.

In Fort Myers, Florida on August 28th, 2026.

Kevin R. Huguelet
United States Magistrate Judge